# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DANIEL KASTEN,**

    Plaintiff,

    v.                                                Case No. 19-CV-428

**LVNV FUNDING, LLC and**
**MESSERLI & KRAMER, P.A.,**

    Defendants.

---

## DECISION AND ORDER

---

    Daniel Kasten filed a complaint against LVNV Funding, LLC ("LVNV") and Messerli & Kramer, P.A. ("Messerli") (collectively "the defendants") alleging a violation of the Fair Debt Collection Practices Act ("FDCPA"). Kasten has filed a motion for judgment on the pleadings. Both Kasten and the defendants have filed motions for summary judgment. For the reasons explained below, Kasten's motions for judgment on the pleadings and for summary judgment are denied, the defendants' joint motion for summary judgment is granted, and this case is dismissed for lack of subject matter jurisdiction.

## FACTS

    Kasten defaulted on his Credit One Bank, N.A. ("Credit One") credit card and his account was placed with Messerli for legal collection on July 20, 2018. (Defs.' Proposed Findings of Fact ("DPFOF") ¶ 6, Docket # 53 and Pl.'s Resp. to DPFOF ("Pl.'s Resp.") ¶ 6, Docket # 57.) Messerli's attempt to collect the debt was on LVNV's behalf. (Pl.'s Proposed Findings of Fact ("PPFOF") ¶ 5, Docket # 61 and Defs.' Resp. to PPFOF ("Defs.' Resp.") ¶ 5, Docket # 72.) Messerli sent an initial demand letter to 4400 S. 27th Street, Room 105,

1

Milwaukee, Wisconsin 53221 (the "Milwaukee Address") (DPFOF ¶ 8 and Pl.'s Resp. ¶ 8) though the parties dispute whether this was Kasten's last known address (DPFOF ¶ 7 and Pl.'s Resp. ¶ 7). No return mail was received. (*Id.* ¶ 8.)

On August 29, 2018, Messerli filed a summons and complaint against Kasten in Milwaukee County Circuit Court for $835.76, the balance outstanding on the Credit One card. (*Id.* ¶ 9.) Messerli's attempt to serve Kasten with the summons and complaint at the Milwaukee Address was unsuccessful. (*Id.* ¶ 10.) Following the service attempt, Messerli was informed that the Milwaukee Address was for a Rodeway Inn & Suites and Kasten was not staying there. (*Id.* ¶ 11.)

Messerli then located a new address for Kasten at 7409 Frederick Place, West Bend, Wisconsin 53090 (the "West Bend Address"). (*Id.* ¶ 12.) On October 9, 2018, in order to confirm the address, Messerli mailed a Post Office Box Request/Change of Address form. (*Id.* ¶ 13.) The response from the United States Post Office indicated that the form was "delivered as addressed" to Kasten at the West Bend Address. (*Id.* ¶ 14.) Messerli asserts that, based on the confirmation of the West Bend Address from the United States Post Office, it filed an order for dismissal of the Milwaukee County action on November 12, 2018, stating that Kasten was a resident of West Bend in Washington County. (DPFOF ¶ 15.)

On November 23, 2018, Messerli mailed a letter to Kasten at the West Bend Address and did not receive return mail. (DPFOF ¶ 16 and Pl.'s Resp. ¶ 16.) Based on this information, on December 10, 2018 (Compl. ¶ 14, Docket # 1), Messerli filed a summons and complaint against Kasten in Washington County Circuit Court. (DPFOF ¶ 17 and Pl.'s Resp. ¶ 17). On December 11, 2018, attempted service of the summons and complaint at the West Bend Address was unsuccessful; the process server later informed Messerli that Kasten did not

2

Case 2:19-cv-00428-NJ     Filed 03/23/21     Page 2 of 15     Document 85

reside there. (DPFOF ¶ 18–19 and Pl.'s Resp. ¶ 18–19.) After this unsuccessful service attempt, Messerli claims that it followed its standard policies and procedures for obtaining updated address information and obtained another address for Kasten: 2742 West Highland Boulevard, Room 204, Milwaukee, Wisconsin (the "Highland Address"). (DPFOF ¶ 20.) As a result, on March 11, 2019, Messerli filed for an order for dismissal of the Washington County action. (DPFOF ¶ 21 and Pl.'s Resp. ¶ 21.)

On March 26, 2019, Kasten filed this action alleging that because he neither signed a contract in Washington County nor lived in Washington County, the defendants violated Section 1692i(a) of the FDCPA by suing him in Washington County Circuit Court. (Compl.; PPFOF ¶¶ 1–2 and Defs.' Resp. ¶¶ 1–2.) Kasten was never served with a lawsuit in the underlying collection action. (DPFOF ¶ 24 and Pl.'s Resp. ¶ 24.)

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(a), a party can seek summary judgment upon all or any part of a claim or defense asserted. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (quoting *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Both Kasten and the defendants move for summary judgment on Kasten's FDCPA claim. Kasten asserts that immediately upon filing the Washington County suit, the defendants violated Section 1692i(a). Meanwhile, the defendants contend that Kasten's Section 1692i(a) claim fails as a matter of law because Kasten was never served with the Washington County summons and complaint. The parties also move for summary judgment on the defendants' bona fide error defense pursuant to Section 1692k(c). Lastly, the defendants assert that Kasten has not demonstrated Article III standing. Because standing is a threshold issue, I address it first.

   1.   *Standing*

Article III of the Constitution grants federal courts the power to decide "Cases" and "Controversies." U.S. Const. art III, § 2. Standing is a doctrine "rooted in the traditional understanding of a case or controversy" that "limits the category of litigants empowered to

4

maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, *as revised* (May 24, 2016). As such, in order to invoke a federal court's jurisdiction, a plaintiff must demonstrate standing to sue. *Id*.

Standing exists when a plaintiff: (1) has suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* And because the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case," the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, (1992). As such, general factual allegations regarding the elements of standing will suffice at the pleading stage, but in response to a summary judgment motion, the plaintiff must "set forth by affidavit or other evidence 'specific facts,'" that, taken as true, support each element of standing. *Id.* (internal citation omitted).

As to the "injury in fact" requirement, the plaintiff must demonstrate "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. The Supreme Court has stated that "[a] concrete injury must be *de facto*; that is, it must actually exist." *Id*. Further, a concrete injury is one that is "real . . . not abstract." *Spokeo*, 136 S. Ct. at 1548. (quotation marks omitted). Although tangible injuries may be easier to recognize, intangible injuries can also be concrete. *Id.* at 1549.

As to determining whether intangible injuries may constitute injuries in fact, "both history and the judgment of Congress play important roles." *Id.* Specifically, because

5

"Congress is well positioned to identify intangible harms that meet minimum Article III requirements," its judgment is "instructive and important." *Id.* But the Supreme Court has explained that a plaintiff does not automatically satisfy the injury-in-fact requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* To the contrary, the *Spokeo* Court affirmed that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

After briefing on the parties' motions for summary judgment concluded, the Seventh Circuit issued a series of decisions addressing the issue of standing in the context of the FDCPA. *See, e.g.*, *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020) (no standing where plaintiffs did not allege any harm or appreciable risk of harm from receipt of dunning letters); *Brunett v. Convergent Outsourcing, Inc.,* 982 F.3d 1067 (7th Cir. 2020) (no standing where plaintiff did not allege injury from statement in dunning letter about reporting release of indebtedness to the IRS); *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir. 2020) (plaintiffs failed to set forth evidence of specific facts demonstrating concrete injury due to omission of statement in dunning letter about accruing interest); *Nettles v. Midland Funding LLC*, 983 F.3d 899 (7th Cir. 2020) (case remanded for dismissal on standing grounds where plaintiff did not allege that collection letter's overstatement of debt amount harmed plaintiff or created an appreciable risk of harm).

One general principle elucidated by the Seventh Circuit's recent decisions is that whether an alleged FDCPA violation is categorized as procedural or substantive, a plaintiff "must allege (and later establish) that the statutory violation harmed him or 'presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect.'" *Larkin*, 982 F.3d at 1060 (quoting *Casillas v. Madison Avenue Associates*, 926 F.3d 329, 333 (7th

Cir. 2019)). As such, although the defendants argued in their summary judgment motion that Kasten lacked standing under the Supreme Court's decision in *Spokeo*, I directed the parties supplement their briefings in light of the recent Seventh Circuit decisions.

Kasten primarily argues that his deposition testimony provides evidence of emotional harm due to the defendants' suit in the wrong venue, which can be redressed by a favorable judicial decision. (Pl.'s Suppl. Br. at 3–4, Docket # 83.) He also asserts that the Washington County suit is now public record. (*Id.*) The defendants contend that the record is devoid of the necessary specific facts to demonstrate that Kasten has suffered a concrete injury traceable to their conduct. (Defs.' Suppl. Br. at 2, Docket # 84.)

During his deposition testimony, Kasten was asked about the various kinds of emotional harm that he alleged as a result of the defendants' actions in his complaint, including "anger, anxiety, emotional distress, fear, humiliation, frustration," and other negative emotions. (Compl. ¶ 18.) Counsel for Messerli first asked Kasten about his anger:

> Q: Okay. Have you suffered anger as a result of this case?
> A: Yes.
> Q: Can you tell me about that?
> A: Rather short-fused with neighbors, people on the bus, transit passengers, and angry at myself at times during that period.
> Q: You said you had a short fuse. Is that something that happened as a result of the lawsuit?
> A: Yes. It was—it's very uncharacteristic of me.
> Q: Did you ever have it—okay. When did you first notice the short fuse?
> A: Probably a few days after that letter came in the mail.
> Q: What letter is that?
> A: The letter talking about the dismissal.

(Deposition of Daniel Kasten ("Kasten Dep.") at 19, Docket # 56-7.) Kasten testified that the source of his anger was "the background stress from the lawsuit," which made him more sensitive toward the individuals he interacts with, such as his neighbors and fellow transit passengers. (*Id.* at 21.) When asked whether "stress from the lawsuit" meant stress about the

7

Washington County lawsuit's dismissal, Kasten replied, "Yes." (*Id.*) Counsel for Messerli inquired further:

> Q: Okay. What about the dismissal of the lawsuit made you stressed?
> A: Well, I searched on CCAP, and I found—after I got the letter, and I found out that they filed a lawsuit, in the first place, and I never got the summons for that.
> Q: Okay. And what about that made you stressed?
> A: That they—it was something that hit me. I thought they were out—it was out of order, the whole thing was out of order. I don't remember getting any collection activity from LVNV, or anybody else, prior to that. No collection letters, nothing.
> Q: So was it the lack of collection letters that made you stressed?
> A: It was the fact that they jumped right into this lawsuit in a wrong venue.
> …
> Q: Okay. Was there something about the lawsuit independent of where it was filed that made you stressed?
> A: No. It's the fact that it was filed in the wrong venue.
> Q: Okay. And how did you come to the belief that it was the wrong venue?
> A: Because I never lived there.

(*Id.* at 21–22.)

Later, Kasten was asked about the anger he experienced after opening the dismissal letter:

> Q: So between the time you opened that piece of mail and the time you realized it was a venue problem, had you spoken to anybody?
> A: No.
> Q: So what made you angry?
> A: Made me what?
> Q: Angry?
> A: Made me angry? Because I knew that it was out of order. It was not—it didn't give me a fair chance to respond.
> Q: So your anger had nothing to do with the venue?
> A: Yes, it did. Because it is the wrong venue, I was not able to respond to a lawsuit.

(*Id.* at 31.)

Counsel for Messerli next probed Kasten about his anxiety. Kasten testified that his anxiety consisted of "physical symptoms, rapid beat of the heart, sweating, [and] lack of sleep." (*Id.* at 34.) Kasten testified that he noticed anxiety related to the lawsuit as soon as he

8

read the dismissal letter. (*Id.* at 35.) When asked what caused the anxiety, Kasten replied:
"What caused the anxiety is the same thing that caused the anger, the debt and the lawsuit."
(*Id.*) Counsel for Messerli inquired further:

> Q: Okay. What about the letter made you—caused your anxiety?
> A: That because I did not get collections stuff, I thought they—this is before I found out it was the wrong venue. This is—had to do with the fact that it came out of the blue. I never got served for the small claims.
> Q: Okay.
> A: And I didn't get any collection stuff. This anxiety really picked speed when I checked CCAP and found out it was filed in the wrong county.
> …
> Q: Okay. But you did read the words that said it was dismissed, right?
> A: Yes.
> Q: Was that before or after your anxiety?
> A: Before.
> Q: So you were anxious about a case that was dismissed?
> A: Because it was not served. They were unable to serve. That flagged—I got a flag that flipped up in my mind, and that's what caused me to check CCAP.
> …
> Q: Okay. And I'm—I'm asking you, not telling you, did you say your anxiety was because it wasn't served?
> A: Yes.
> Q: So it wasn't because of the venue at that point, or it was? And you can answer me.
> A: Yeah, it was not being served, and that's—that anxiety led to me checking CCAP, which I found out about the venue, and that raised the anxiety up some more.

(*Id.* at 40.)

Kasten was next asked about the emotional distress that he alleged in his complaint. Kasten explained that his emotional distress was what led to his anger and anxiety and defined it as, emotionally, not being able to "operate normally." (*Id.*) Kasten testified that his emotional distress affects his daily activities, including causing him to be more careful about how he interacts with others; affecting his ability to get up early enough in the morning; and affecting his eating habits. (*Id.* at 40–41.) Counsel for Messerli questioned Kasten about the cause of his emotional distress:

9

> Q: Are we still talking about after you opened this dismissal letter?
> A: Yes.
> Q: What about the dismissal letter caused you to have to watch how you—how you react to other people?
> A: What about the dismissal letter? The fact that it was not served, was unable to be served.

(*Id.* at 41.)

Kasten also testified at the deposition about his alleged fear, humiliation, frustration, and other negative emotions. As to fear, Kasten testified that when he first opened the dismissal letter, he had a "fear of the unknown" and "general anxiety," but when he checked Consolidated Court Automation Programs, or CCAP, the fear decreased because he then knew why the Washington County lawsuit was not served (i.e., it was filed in the wrong county.) (*Id.* at 43.) Kasten testified that his humiliation had "more to do with the combination of [the dismissal letter]—which rebrought [sic] back the memory about the debt," and that people in debt "don't feel very good." (*Id.* at 43–44.) Kasten also testified that he was humiliated because he may have had to appear in court: "[T]he fact of filing the lawsuit made—you know, if I would have had to go to that court hearing, that's humiliating." (*Id.* at 44.) Further, Kasten testified that when he opened the dismissal letter, he was frustrated because "it jumped from no collection activity on [his] end to a lawsuit," and when he checked CCAP and found out the lawsuit was filed in the wrong county, he was "very frustrated." (*Id.* at 45.) When asked to clarify what about the lawsuit being filed in the wrong county frustrated him, Kasten replied: "I couldn't do nothing about it. I'm not in Washington County." (*Id.*)

Finally, Kasten addressed the "other negative emotions" that he allegedly experienced:

> A: There were some crying spells that came along the way, minor—get up in the morning, kind of—I don't know if I want to call it depression, but

>       it's, you know, feeling sad. Because the debts are negative. This whole thing is negative. And I felt powerless for a moment there, you know.
> Q:    Powerless to do what?
> A:    Because it was in the wrong county, and I said, "What do I do now? I don't have an attorney. I don't have nothing."
> Q:    You were aware it was dismissed when you opened the letter, right?
> A:    Right. But that's temporary because it—it didn't say "without"—"with prejudice." It said[,] "without prejudice." So it means they can come back.

(*Id.* at 46.) Kasten attributed his crying spells and "feeling sad," generally to his debt, stating that he cried because the case was dismissed. (*Id.* at 46.)

The Seventh Circuit has found that, absent facts "so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's actions," a plaintiff whose own testimony is the only proof of emotional damages "must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements." *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003). Here, Kasten's deposition testimony contains very little detail to substantiate a concrete injury of emotional harm from the defendants' act of filing a small claims suit in an improper venue. At best, Kasten's testimony about his anger reveals that he was angry because he did not get the opportunity to respond to a lawsuit that had already been dismissed. Similarly, Kasten's deposition testimony fails to substantiate his alleged injuries of anxiety and emotional distress from being sued in Washington County. Instead, Kasten's deposition testimony suggests that what caused him anxiety and emotional distress was the fact that the lawsuit was dismissed because it was unable to be served. And although Kasten testified that he experienced fear, humiliation, frustration, and other negative emotions, his statements were either conclusory or contradictory.

I acknowledge that there is a difference between the merits of a claim and the issue of standing. The Seventh Circuit has explained that "[s]tanding is a prerequisite to filing suit, while the underlying merits of a claim (and the laws governing its resolution) determine whether the plaintiff is entitled to relief." *Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) (emphasis omitted). Thus, "[t]he fact that a plaintiff may have difficulty proving damages does not mean that he cannot have been harmed." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013). Nevertheless, considering the applicable standard on the merits for emotional damages claims when examining the evidence relevant to the issue of standing may be instructive. *See Thompson v. Equifax Info. Servs., LLC*, 441 F. Supp. 3d 533, 542 (E.D. Mich. 2020) (reasoning that case law on the Sixth Circuit's "strict standard for recoverability" of emotional damages on the merits was "at least somewhat useful" in determining whether the evidence of emotional injury that Fair Credit Reporting Act plaintiff put forth to demonstrate standing on summary judgment was sufficient).

For example, in *Crabtree v. Experian Info. Sols., Inc.*, No. 16 CV 10706, 2018 WL 1872112, at *3 (N.D. Ill. Apr. 17, 2018), *aff'd,* 948 F.3d 872 (7th Cir. 2020), the plaintiff argued that he had Article III standing based on his alleged emotional harm resulting from the defendant's alleged Fair Credit Reporting Act violation. The court acknowledged that emotional distress could be a proper basis for standing but rejected plaintiff's alleged injury on summary judgment. *Id.* The court noted that "[t]he law has always been wary of claims of emotional distress, because they are so easy to manufacture." *Id.* (quoting *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001)). Moreover, relying on the Seventh Circuit's findings in *Denius*, the court rejected as insufficient the plaintiff's testimony about stress, anxiety, and embarrassment from the defendant's alleged FCRA violation because the

plaintiff "provide[d] no evidence other than his own testimony as proof of his emotional damages," and the plaintiff's "alleged conclusory statements [did] not provide reasonable detail in explaining the circumstances of his alleged injury." *Id.* In addition, the court found that the defendant's alleged conduct "was not so inherently degrading that it would be reasonable to infer that [p]laintiff suffered emotional distress." *Id.*

Likewise, Kasten has not put forth specific facts to show that he suffered concrete emotional harm due to the defendants' filing of a lawsuit in a county where he did not reside. As the Seventh Circuit recently stated in another case dismissed for lack of standing:

> Gracia's complaint alleged, and her supplemental briefing reiterated, that the SEC disclosures have caused her mental anguish, emotional distress, humiliation, and other consequential damages. In response to SigmaTron's motion for summary judgment, however, Gracia had to move beyond allegations and point to evidence establishing a concrete and particularized injury. Right to it, "[r]epeating the conclusory allegations of a complaint is not enough."

*Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1064 (7th Cir. 2021) (quoting *Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 973 (7th Cir. 2005)). Kasten was vague and conclusory in identifying the cause of his alleged emotional distress. When pressed it was the existence of the debt itself—not being served with the Washington County lawsuit or the fact that the lawsuit could potentially be refiled in the appropriate county—at the root of his damages

Nor has Kasten demonstrated that the defendants' filing of the small claims suit in Washington County created an actual risk of harm to him. In drafting the venue provision of the FDCPA, Congress sought to address the problem of forum abuse, "an unfair practice in which debt collectors file suit against consumers in courts which are so distant or inconvenient that consumers are unable to appear. As a result, the debt collectors obtains [sic] a default

13

judgment and the consumer is denied his day in court." S. REP. 95-382, 5, 1977 U.S.C.C.A.N. 1695, 1699. Here, before Kasten even had knowledge of the small claims suit in Washington County, it had been dismissed. Moreover, Kasten testified that he did not owe anyone as a result of being sued in the wrong venue by Messerli, nor did he lose any money as a result of Messerli's actions. Although Kasten asserts that the lawsuit against him in the wrong venue is now public record, how this bare assertion demonstrates standing is unclear. A lawsuit filed against Kasten for the outstanding debt in the correct venue would have been part of the public record as well.

In order to demonstrate standing at the summary judgment stage, Kasten was required to set forth "specific facts" showing that the defendants' act of filing suit in a county in which he did not reside caused him a concrete and particularized injury. Kasten has not done so, meaning that he cannot meet the requisite elements of standing. Therefore, this case will be dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's motion for judgment on the pleadings (Docket # 23) is **DENIED**.

**IT FURTHER ORDERED** that the defendants' joint amended motion for summary judgment (Docket # 52) is **GRANTED**.

**IT IS ALSO ORDERED** that the plaintiff's motion for summary judgment (Docket # 60) is **DENIED**.

**FINALLY, IT IS ORDERED** that this action is **DISMISSED** for lack of subject matter jurisdiction. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 23rd day of March, 2021.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge

15